IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

TIFFANY O'GRADY,

           Plaintiff,

  v.                                              Civil Action No.
                                                      3:17-CV-0384 (DEP)

NANCY A. BERRYHILL, Commissioner of
  Social Security,

           Defendant.

---

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

GORTON LAW OFFICE           PETER A. GORTON, ESQ.
1500 E. Main Street
P.O. Box 89
Endicott, NY 13760

FOR DEFENDANT:

HON. GRANT C. JAQUITH       VERNON NORWOOD, ESQ.
U.S. Attorney for the            Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on January 10, 2018, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

(1)   Plaintiff's motion for judgment on the pleadings is GRANTED.

---

[1]   This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

(2) The Acting Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

(3) The matter is hereby REMANDED to the Acting Commissioner, with a directed finding of disability, for the purpose of calculating benefits owing to the plaintiff.

(4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:   January 11, 2018
         Syracuse, NY

```
 1  UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF NEW YORK
 2  ------------------------------------------------------x

 3  TIFFANY O'GRADY,

 4       vs.                                    3:17-CV-384

 5  NANCY A. BERRYHILL, Commissioner of Social
    Security.
 6
    ------------------------------------------------------x
 7
              Transcript of a Decision on January 10, 2018, at the
 8  James Hanley Federal Building, 100 South Clinton Street,
    Syracuse, New York, the HONORABLE DAVID E. PEEBLES, United
 9  States Magistrate Judge, Presiding.

10                          A P P E A R A N C E S:
                               (by telephone)
11
    For the Plaintiff:       LACHMAN & GORTON LAW OFFICE
12                           P.O. Box 89
                             1500 East Main Street
13                           Endicott, New York 13761
                             BY:  PETER A. GORTON, ESQ.
14
    For the Defendant:       SOCIAL SECURITY ADMINISTRATION
15                           26 Federal Plaza
                             Room 3904
16                           New York, New York 10278
                             BY:  VERNON NORWOOD, ESQ.
17

18

19

20

21

22

23                       Hannah F. Cavanaugh
                   Official United States Court Reporter
24                      100 South Clinton Street
                       Syracuse, New York 13261-7367
25                          (315) 234-8545
```

1                (Time noted:  10:21 a.m.)

2                (In Chambers, Counsel present by telephone.)

3                THE COURT:  All right.  I have before me a request
4      for judicial review of an adverse determination by the Acting
5      Commissioner pursuant to 42 United States Code Sections 405(g)
6      and 1383(c)(3).

7                The background is as follows:  Plaintiff was born in
8      April of 1988, is currently 29 years old.  She is 5'5" tall and,
9      at least in June of 2016, weighed 243 pounds.  She has been
10     characterized as being obese.

11               She has a ninth grade education and no GED.  While in
12     school, she attended regular classes.  She was generally a good
13     student, but dropped out at age 14 and moved in with her
14     boyfriend and his mother.

15               It's unclear where she currently lives at the time.
16     At one point, she lived in Binghamton, but she may have moved
17     out of state to North Carolina.

18               Plaintiff last worked for one year in a Dell call
19     center either one year or two years.  At one point in the
20     administrative transcript it's listed as June 2007 to
21     February 2008.  She was fired for absenteeism.  She has also
22     worked in a fast food setting at a Kentucky Fried Chicken and in
23     another call center in Florida.

24               Plaintiff suffers from both physical and mental
25     impairments.  She suffers back pain and has been treated by

1  Dr. Sae -- S-A-E-J-O-U-N, Park.  She was also referred to an
2  orthopedic specialist, Dr. Kamlesh, K-A-M-L-E-S-H, Desai,
3  D-E-S-A-I.  She's been diagnosed as having lumbar scoliosis with
4  mild pelvic obliquity, but her disc spacing appears to be
5  maintained and there's no evidence of subluxation.
6           She underwent MRI testing back in 2007 that showed
7  mild facet arthropathy and synovitis at L3-L4 and L5-S1, but
8  with no compressive discopathy.  The plaintiff has been
9  diagnosed, at least at one point by her treating physician,
10 Dr. Park, as having fibromyalgia.  That's at 835 in the
11 administrative transcript.
12          Mentally, plaintiff has been seen and treated by
13 Dr. Park, as well as by the Broome County Mental Health
14 professionals where she has seen Dr. M-A-H-F-U-Z-U-R, Rahman,
15 R-A-H-M-A-N, and Licensed Clinical Social Worker or LCSW
16 Melanie Hertzog.  She was also evaluated psychologically in
17 December of 2008 by Dr. Robert Russell.
18          She's been variously diagnosed as having dysthymic
19 disorder, schizoaffective disorder of a bipolar type, and rule
20 out PTSD.  She's been assessed -- global assessment of
21 functioning or GAF scores are between 50 and 60 at various
22 times.
23          Plaintiff also testified and claims that she
24 experiences seizures, although she has not pressed the seizures
25 as a basis for a finding of disability.

1        I note that, as an aside note, that a review of
2   plaintiff's mental health treatment and physical treatment
3   records reveal a pattern of no shows or call-ins, including at
4   493 to 495 with regard to her mental health record and
5   Exhibit 30F, Dr. Park's records.
6        Plaintiff has variously been prescribed Ambien for
7   sleep, Tramadol, Seroquel, Soma, a nose spray, Claritin, Lyrica,
8   Suboxone, Neurontin, and Klonopin.  She smokes between a half
9   and one and a half packs of cigarettes a day.  That's at 447,
10  370, and 810 of the administrative transcript.
11       In terms of daily activities, she's able to dress and
12  bathe and groom herself.  She cooks, cleans, does some laundry,
13  although needs assistance with lifting.  She can shop with
14  assistance.  Watches television, listens to the radio, reads,
15  and she enjoys drawing and painting.
16       As Mr. Gorton alluded to, this case has had a
17  tortured procedural history.  Plaintiff first applied for
18  benefits in July of 2009 for disability benefits and SSI
19  payments alleging an onset date of February 15, 2008.
20       A hearing was conducted by Administrative Law Judge
21  Bruce Fein, F-E-I-N, on December 1, 2010.  ALJ Fein issued an
22  unfavorable decision on March 10, 2011.  That determination was
23  vacated on July 30, 2012, by the Social Security Administration
24  Appeals Council and the matter was remanded with specific
25  instructions, including the requirement to call a vocational

1  expert to testify.

2  A second hearing was conducted on April 5, 2013, by
3  ALJ Fein. A second decision, also unfavorable, was issued on
4  August 29, 2013. On December 17, 2014, the Appeals Council
5  denied plaintiff's request for a review making that a final
6  determination of the agency.

7  On January 28, 2015, plaintiff filed an action in
8  this court, civil action number 15-CV-104. After full briefing
9  and argument, a decision was issued vacating the determination
10 or remanding the matter for further consideration. That was on
11 October 13, 2015.

12 The -- on February 23, 2016, the Appeals Council
13 directed that the matter be reassigned to a new Administrative
14 Law Judge. Based upon the Court's remand, a hearing was
15 conducted by Administrative Law Judge Elizabeth Koennecke,
16 K-O-E-N-N-E-C-K-E, on October 31, 2016. ALJ Koennecke issued a
17 decision on December 8, 2016. This action was then commenced.
18 In her decision, ALJ Koennecke applied the familiar five-step
19 sequential test for determining disability.

20 At step one, she found that plaintiff had not engaged
21 in substantial gainful activity since her alleged onset date.

22 At step two, she concluded that plaintiff suffers
23 from severe conditions, including a mental impairment and a back
24 impairment and obesity.

25 At step three, she concluded that plaintiff's

1  conditions did not meet or medically equal any of the listed
2  presumptively disabling conditions.  She considered listings
3  1.04 and 12.04.
4         After surveying the available medical records,
5  ALJ Koennecke concluded that plaintiff retains the residual
6  functional capacity or RFC to lift and/or carry ten pounds
7  occasionally and less than ten pounds frequently for six hours
8  in an eight-hour workday, stand and/or walk for six hours in an
9  eight-hour workday, and occasionally perform all postural
10 activities, basically sedentary work with additional
11 limitations, addressing primarily her mental issues.  And that's
12 at page 580 of the administrative transcript.
13        At page -- at step four, ALJ Koennecke concluded
14 plaintiff cannot perform her past relevant work based on that
15 RFC finding.  After noting that if the medical vocational
16 guidelines or the grids were applied, plaintiff's condition
17 would not be disabling applying Rule 201.24, the ALJ, relying on
18 the vocational expert's testimony, concluded the plaintiff is
19 able to perform the functions of an order clerk, food and
20 beverage addresser, and waxer, and that there were sufficient
21 numbers of those jobs in the national economy to be significant
22 and, therefore, found that plaintiff was not disabled at the
23 relevant times.
24        As you know, my task is limited to determining
25 whether correct legal principals were applied and the

1  determination is supported by substantial evidence.  After I
2  reviewed the matter extremely carefully, I am left with a firm
3  belief that the process followed lacked fundamental fairness,
4  that correct legal principals were not applied, and substantial
5  evidence does not support the ALJ's findings.
6              I was very disappointed when I compared the decision
7  of ALJ Koennecke, who I have a great deal of respect for, to the
8  prior decisions of ALJ Fein, and concluded that and found that
9  literally large blocks of the -- of the prior decisions were
10 lifted and copied exactly.  It didn't convince me either
11 substantively or otherwise that ALJ Koennecke conducted the kind
12 of de novo searching/review that was contemplated by the Court
13 and by the Appeals Council.
14             The vast majority of page 579 is copied from
15 ALJ Fein's decision.  580, about half of the lines are directly
16 from ALJ Fein's decision.  581, about two-thirds is lifted from
17 ALJ Fein's decision.  582, about a third is copied.  583 is
18 almost entirely copied and is not accurate, including the second
19 and third paragraphs are not accurate.  584 is almost
20 completely, with one small paragraph, copied from the prior
21 decision.  And 585, one paragraph.  586, about half.  587 is
22 almost totally copied from the decision.
23             You know, mentally I tend to agree, as I did
24 previously, that the mental component of the RFC is supported by
25 Dr. Noia and Dr. Nobel.  The only question would be the off task

1  and absenteeism provisions, and we'll come back to that.
2              And physically, it's clear ALJ Koennecke recognized
3  that it was improper to rely on the opinions of Dr. Werner, who
4  is an OB/GYN, as ALJ Fein had, but she rejected essentially all
5  of the other medical evidence in the record, including
6  Dr. Park's medical source opinions, Dr. Magurno, Dr. Wiesner,
7  and does not really offer any medical support other than her
8  opinions concerning plaintiff's physical RFC.
9              The rejection of Dr. Park is not -- it's not
10 supported.  It's wrong to say that Dr. Park's opinions are based
11 solely on plaintiff's subjective complaints.  There are
12 objective indications that she suffers from back issues and she
13 has had -- there's clinical evidence that supports that,
14 treatment notes support that, there's an MRI, as I indicated
15 previously, that supports it.
16             And even if his opinion was rejected, ALJ Koennecke
17 did not discuss the regulatory factors that are required in
18 order to determine how much weight, if it's not given
19 controlling weight, should be given to Dr. Park.  There is no
20 discussion whatsoever of those regulatory factors under 20 CFR
21 Section 404.1527, including whether he examined the plaintiff,
22 whether he's an ongoing treater, whether his opinions are
23 supported by clinical findings, and whether they're consistent
24 with others.  And, of course, they are consistent with
25 Dr. Magurno and Dr. Wiesner.

1              It's prejudicial because, if no other reason, the
2     limitations on sitting are inconsistent with the RFC and
3     sedentary work, as well as the attendance and off task opinions.
4              Dr. Magurno is also improperly discounted.
5     Dr. Magurno is someone who has programatic expertise, as the
6     Commissioner often argues, when trying to support the opinion of
7     a consultative examiner.  It's supported by his objective exam
8     findings, and I reviewed those carefully.
9              I think the opinions of Dr. Wiesner were also
10    improperly discounted.
11             I know that Mr. Gorton has raised concerns, and I
12    have concerns as well, about making statements like were
13    contained in ALJ Koennecke's decision where a -- an opinion is
14    discounted based on experience in other cases.
15             The matter was confronted by this court in Stevens
16    versus Commissioner of Social Security found at 2016 WL 3199515
17    from June 18, 2016.  The Court, in that case, observed that few
18    courts -- the few courts that had addressed this particular
19    argument were split, either considering such commentary
20    permissible so long as it is not the sole factor for discounting
21    the medical opinion or finding such comments improper and
22    requiring a remand before a different ALJ.
23             The Eleventh Circuit addressed it in Miles versus
24    Chater, 84 F.3d 1397, it's a 1996 decision, and held it
25    inappropriate for an ALJ to discount a medical report on the

1  basis that certain physicians almost invariably conclude that
2  the person being examined is totally disabled because such an
3  observation without supporting evidence indicates potential
4  bias.
5         The Third Circuit took a little bit more subdued
6  approach in Miller versus Commissioner, 172 F.3d 303, and
7  observed it would be erroneous for an ALJ to summarily reject
8  every report submitted by a certain doctor of a law firm simply
9  because the doctor reaches the same conclusion in every case,
10 but added that an ALJ should be afforded substantial discretion
11 to give little way to a medical report that was carbon copied
12 from previous litigation without taking into account the
13 specific applicant's condition.
14         I -- so I don't hinge my decision necessarily on the
15 impropriety of rejecting Dr. Wiesner's decision and making the
16 additional comment that in a lot of Mr. Gorton's cases,
17 Dr. Wiesner opines more -- with a more limited physical RFC than
18 supported by his objective findings.  I do find that
19 ALJ Koennecke did at least discuss a reason for rejecting it in
20 this specific case.
21         The real issue here is attendance and off task.  And
22 virtually everyone that has offered an opinion on this issue has
23 said that plaintiff is likely to be absent in an amount of time
24 that would be inconsistent with employment and would be off task
25 similarly.  Dr. Park at 443 and again 847 and 848 said plaintiff

1  would be absent more than three times per month and off task

2  more than 33 percent of the time.

3        Dr. Wiesner similarly at 501, 502, plaintiff will be

4  absent more than three times per month and off task 20 to

5  30 percent of the time.

6        LCSW Hertzog indicated at 471, plaintiff would be

7  absent more than three times per month.

8        Dr. Russell, at 350, noted that the plaintiff --

9  plaintiff's depression might interfere and had a slight

10 potential to interfere with her attendance.

11       And I note that plaintiff was fired from her prior

12 position for absenteeism.  The vocational expert testified that

13 the -- an employer would tolerate no more than one absence per

14 month at 702 and no more than ten percent off task at 703.

15       The -- in my view, the evidence is clear and

16 overwhelming that plaintiff would be likely absent at least

17 three times per month and off task at least 20 to 30 percent.

18       The -- and I agree with plaintiff, vocational

19 expert -- I'm sorry, the Commissioner bears the burden at step

20 five, and although I understand defendant's argument, the

21 Commissioner would like to interpret the vocational expert's

22 testimony as saying these are only examples of positions that

23 plaintiff is capable of performing, but that's not how the

24 testimony came through.  I read it very carefully over and over.

25       It's very clear to me these are the three positions

1  that he believes she can perform, a total of 8,499 jobs
2  nationally with no indication regionally.  So as Mr. Gorton
3  argues, even if that amount in and of itself is significant,
4  even a little erosion of that amount is significant when it
5  comes to whether the Commissioner carried her burden.
6          The -- it's true that the Social Security Act and the
7  regulations themselves, as well as the Social Security rulings,
8  do not provide a definition for a significant number of jobs.
9  In this circuit, courts have generally refused to draw
10 bright-lines/standards for the minimum number of jobs required
11 to show that work exists in significant numbers.  And although
12 it's fairly minimal, it's not -- it's not zero.
13         And I tend to agree that 10,000 seems to be a cutoff
14 that some courts have used.  In Hanson versus Commissioner of
15 Social Security, this court -- that's at 2016 WL 3960486 --
16 Northern District of New York, 2016, held that numbers varying
17 from 9,000 upward can constitute significant.
18         There are cases that -- that go both ways when you
19 get into the 4,000, 5,000 range.  4,000 or 5,000 is clearly not
20 significant.  That's Leonard versus Heckler 582 F.Supp. 389,
21 Middle District of Pennsylvania, 1983.  I think there's a good
22 argument to be made that 8,499 in and of itself is not
23 significant, particularly since there is no indication of
24 regional availability.
25         But in any event, because of the further erosion due

1  to potential absenteeism and being off task, I think that the

2  Commissioner has not carried her burden at step five to

3  demonstrate the existence of work to be performed in the

4  economy.

5          As I indicated, I think I have a firm belief that

6  error's been committed, that the plaintiff -- overwhelming

7  evidence suggests that she is disabled, so I'm going to reverse

8  the Commissioner's determination and direct the matter be

9  remanded with a directed finding of disability solely for

10 purposes of calculating benefits.

11         Thank you both for excellent presentations and an

12 interesting case.  Have a good afternoon.

13         MR. GORTON:  Thank you, your Honor.

14         MR. NORWOOD:  Good afternoon.

15                      (Time noted:  10:42 a.m.)

16

17

18

19

20

21

22

23

24

25

HANNAH F. CAVANAUGH, Official Court Reporter
(315) 234-8545

1     CERTIFICATE OF OFFICIAL REPORTER

2

3          I, HANNAH F. CAVANAUGH, Official Court Reporter, in and

4     for the United States District Court for the Northern District

5     of New York, DO HEREBY CERTIFY that pursuant to Section 753,

6     Title 28, United States Code, that the foregoing is a true and

7     correct transcript of the stenographically reported proceedings

8     held in the above-entitled matter and that the transcript page

9     format is in conformance with the regulations of the Judicial

10    Conference of the United States.

11

12               Dated this 10th day of January, 2018.

13

14                         /S/ HANNAH F. CAVANAUGH_____

15                         HANNAH F. CAVANAUGH

16                         Official U.S. Court Reporter

17

18

19

20

21

22

23

24

25